1  Matthew L. Schwartz (admitted *pro hac vice*)
   BOIES SCHILLER FLEXNER LLP
2  575 Lexington Avenue
   New York, New York 10022
3  Telephone: (212) 446-2300
   Fax: (212) 446-2350
4  E-mail: mlschwartz@bsfllp.com

5  David L. Zifkin (SBN 232845)
   BOIES SCHILLER FLEXNER LLP
6  401 Wilshire Boulevard, Suite 850
   Santa Monica, California 90401
7  Telephone: (310) 752-2400
   Fax: (310) 752-2490
8  E-mail: dzifkin@bsfllp.com

9
   Attorneys for Claimant
10 Park Laurel Acquisition LLC

11

12

13              **UNITED STATES DISTRICT COURT**

14        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15                    **WESTERN DIVISION**

16 | UNITED STATES OF AMERICA, | Case No. 16-cv-05371-DSF (PLAx)

17 |              Plaintiff, | CLAIMANT'S MEMORANDUM OF
                              LAW IN OPPOSITION TO THE
18 | v. | GOVERNMENT'S MOTION FOR
                              ORDER STAYING CIVIL
19 | REAL PROPERTY LOCATED IN | FORFEITURE PROCEEDINGS FOR
   NEW YORK, NEW YORK, | ALL PURPOSES EXCEPT THE
20 |              | FILING OF TIMELY CLAIMS AND
   |              Defendant. | ANSWERS
21

22

23

24

25

26

27

28

CLAIMANT'S MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION TO STAY

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF FACTS ......................................................................... 2

LEGAL STANDARD................................................................................ 5

ARGUMENT ........................................................................................... 7

I.     THE GOVERNMENT HAS NOT DEMONSTRATED THAT DISCOVERY WILL ADVERSELY AFFECT ANY ONGOING INVESTIGATION ............................................................................ 8

     A.    The Government Has Not Made an "Actual Showing" That Civil Discovery Will Interfere with any Investigation..................................... 8

     B.    The Motion Is Not Ripe Because Claimant Has Not Yet Made Discovery Requests .................................................................. 8

     C.    A Blanket Stay Would Violate Claimant's Due Process Rights........... 11

II.    A PROTECTIVE ORDER CAN RESOLVE THE GOVERNMENT'S PURPORTED CONCERNS WHILE ALLOWING CIVIL DISCOVERY TO PROCEED ........................................................................... 15

III.   THERE IS ABSOLUTELY NO BASIS ON WHICH TO STAY "ALL PROCEEDINGS".................................................................... 18

IV.   IF CIVIL DISCOVERY IS STAYED, THE GOVERNMENT SHOULD HAVE TO RENEW ITS REQUEST EVERY 90 DAYS............................... 20

CONCLUSION...................................................................................... 21

1

## TABLE OF AUTHORITIES

2

## CASES

3
*Bennis v. Michigan*,
   516 U.S. 442 (1996) .......................................................................... 12

4
*Landis v. N. American Co.*,
   299 U.S. 248 (1936) .......................................................................... 20

5

6
*Leonard v. Texas*,
   137 S. Ct. 847, 847 (2017) ........................................................... 12, 14

7
*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ............................................................. 19

8

9
*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
   708 F.2d1458 (9th Cir. 1983) ............................................................ 19

10
*SEC v. Constantin*,
   No. 11 Civ. 4642, 2012 WL 1195700 (S.D.N.Y. Apr. 9, 2012) ................... 17

11

12
*SEC v. Mazzo*,
   No. SACV 12–1327–DOC(ANx), 2013 WL 812503 (C.D. Cal. Feb. 25, 2013) ......... 17

13
*SEC v. Oakford Corp.*,
   181 F.R.D. 269 (S.D.N.Y. 1998) ......................................................... 17

14

15
*SEC v. Sandifur*,
   No. C05-1631 C, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006) ................ 17

16
*SEC v. Scammell*,
   No. CV11-6597 DSF (MRWx), 2014 WL 12597627 (C.D. Cal. Feb. 3, 2014) ......... 17

17

18
*United States v. $1,026,781.61 in United States Currency*,
   Nos. CV 09–04381–JVS(ANx), 2013 WL 4714188 (C.D. Cal. July 29, 2013) ........... 9

19
*United States v. $177,844.68 in U.S. Currency*,
   No. 2:13-CV-00100-JCM, 2015 WL 355495 (D. Nev. Jan. 27, 2015) ............. 15

20

21
*United States v. $307,970.00, in U.S. Currency*,
   156 F. Supp. 3d 708 (E.D.N.C. 2016) .................................................. 12, 21

22
*United States v. $463,497.72 in U.S. Currency*,
   604 F. Supp. 2d 978 (E.D. Mich. 2009) ............................................... 16

23

24
*United States v. 2009 Dodge Challenger*,
   No. 03:11–CV–328–MA, 2011 WL 6000790 (D. Or. Nov. 30, 2011) ............. 10

25
*United States v. All Funds ($357,311.68) Contained in N. Tr. Bank of Florida Account No. 7240001868*, No. CIV.A.3:04-CV-1476-G, 2004 WL 1834589 (N.D. Tex. Aug. 10, 2004) ................................................................... 6

26

27
*United States v. All Funds Deposited in Account No. 200008524845*,
   162 F. Supp. 2d. 1325 (D. Wy. 2001) .................................................. 20

28

S A N T A   M O N I C A ,   C A L I F O R N I A

*United States v. Approximately $104,770 in U.S. Currency*,
No. C 11-0-249 MMC, 2011 WL 2472573 (N.D. Cal. June 22, 2011) ....................... 20

*United States v. Approximately $69,577 in U.S. Currency*,
No. C 09–0674 PJH, 2009 WL 1404690 (N.D. Cal. May 19, 2009) .......................... 10

*United States v. Assorted Firearms, Motorcycles, and Other Personal Prop.*,
677 F. Supp. 2d 1214 (C.D. Cal. 2009) ........................................................ 10

*United States v. Contents of Accounts, et. al.*,
No. 3:10-cv-228-H, 2010 WL 2682397 (W.D. Ky. July 2, 2010) ........................... 11

*United States v. Currency $716,502.44*,
No. 08-CV-11475, 2008 WL 5158291 (E.D. Mich. Dec. 5, 2008) .............................. 8

*United States v. One 2008 Audi R8 Coupe Quattro*,
866 F. Supp. 2d 1180 (C.D. Cal. 2011) ............................................................ 6

*United States v. Real Prop. & Improvements Located at 1419 Camellia Drive, E.
Palo Alto, Cal.*,
No. C 09-02577 CW, 2009 WL 3297321 (N.D. Cal. Oct. 13, 2009) ....................... 6, 9

*United States v. Real Prop. & Premises*,
657 F. Supp. 2d 1060 (D. Minn. 2009) ........................................................... 9

*United States v. Real Prop. at 6557 Ascot Drive*,
 No. C 02-4948 JSW, 2005 WL 927452 (N.D. Cal. Apr. 21, 2005) ......................... 6, 8

*United States v. Real Prop. Located at 149 G St., Lincoln, Cal., Placer Cty.*,
*APN 008-266-015-000*, No. 2:12-CV-0705-TLN-DAD, 2013 WL 2664770 (E.D.
Cal. June 12, 2013) .................................................................................. 6

*United States v. Real Prop. Located at 6415 N. Harrison Ave., Fresno Cty.*,
No. 1:11-CV-00304-BAM, 2012 WL 4364076 (E.D. Cal. Sept. 21, 2012) ........... 11, 12

*United States v. Sum of $70,990, 605*,
4 F. Supp. 3d 209 (D.D.C. 2014) ............................................................ 15, 16

*United States v. Walters*,
No. 16 Cr. 38 (PKC) (S.D.N.Y. Mar. 1, 2017) .............................................. 13

*Wallace v. Kato*,
549 U.S. 384 (2007) ................................................................................ 19

**STATUTES AND RULES**

Federal Rules of Criminal Procedure
Rule 6(e) ................................................................................................. 13

United States Code
Title18, Section 981(g)...................................................................... 6, 18, 20

**OTHER AUTHORITIES**

"Attorney General Loretta E. Lynch Delivers Remarks at Press Conference
Announcing Significant Kleptocracy Enforcement Action to Recover More Than
$1 Billion Obtained from Corruption Involving Malaysian Sovereign Wealth
Fund" (July 20, 2016).............................................................................................. 13

"DoJ says its court filings based on reasonable facts," Free Malaysia Today (June
21, 2017).................................................................................................................. 13

Bradley Hope, "FBI Probes Malaysia Development Fund," *The Wall Street
Journal* (Sept. 19, 2015)........................................................................................... 2

Greg Farrell, et al., "1MDB Prosecutors Said to Eye Ex-Goldman Banker's Money
Moves," *Bloomberg* (Apr. 28, 2017)........................................................................ 13

July 20, 2016, Press Release, "United States Seeks to Recover More Than $1
Billion Obtained from Corruption Involving Malaysian Sovereign Wealth Fund" ..... 13

June 15, 2017, Press Release, "U.S. Seeks to Recover Approximately $540 Million
Obtained From Corruption Involving Malaysian Sovereign Wealth Fund"................. 13

Justin Baer & Bradley Hope, "U.S. Examines Goldman Sachs Role in 1MDB
Transactions" *The Wall Street Journal* (Oct. 14, 2015).......................................... 13

Justin Baer, "Goldman Sachs Subpoenaed by U.S. Agencies for Documents
Related to 1MDB," *The Wall Street Journal* (July 29, 2016)...................................... 13

Zikri Kamarulzaman, "Not an attempt to topple Malaysian gov't, says US
embassy," Malaysiakini (June 22, 2017) ................................................................. 13

1    Claimant Park Laurel Acquisition LLC ("Claimant"),[1] by and through its attorneys
2    Boies Schiller Flexner LLP, respectfully submits this memorandum of law in opposition
3    to the government's motion (the "Motion") for an order staying this and several related
4    civil forfeiture proceedings for all purposes "except the filing of timely claims and
5    answers."

6                        **PRELIMINARY STATEMENT**

7    Claimant should not have to wait any longer to clear its name.  These cases have
8    been pending for over a year, and the government's underlying investigation has been
9    ongoing (according to press reports) for at least two.  Claimant has a strong interest in
10   defending this action and regaining the unfettered use of its property.  But instead, based
11   on the assertion that discovery "will have an adverse effect" on the investigation, the
12   government now seeks to stay these cases indefinitely.

13   The Motion should be denied.  As a threshold matter, it is premature:  Claimant has
14   not served discovery requests on the government, so it is impossible to assess the claim
15   that discovery will harm the government's investigation.  Moreover, while the forfeiture
16   laws expressly permit a stay of civil discovery, they also prefer a protective order where
17   one would address the government's legitimate concerns.  Assuming that the government
18   can demonstrate that some discovery would adversely affect its investigation, plainly
19   other discovery should be permissible.  Indeed, the declaration submitted in support of
20   the Motion avers only that "disclosure of any facts beyond those set forth in the [First
21   Amended Complaint]" would be harmful.  Enyart Declaration, ¶ 5.  Discovery of the

22   _____

23   [1]    Identical opposition briefs are being filed on behalf of claimant Park Laurel
     Acquisition LLC in *United States v. Real Property Located in New York, New York*, No.
     16-cv-05371-DSF (concerning "the Park Laurel Condominium"); on behalf of claimant
24   912 North Hillcrest Road (BH), LLC in *United States v. Real Property Located in
     Beverley Hills, California*, No. 16-cv-05377-DSF ("Hillcrest Property 1"); and on behalf
25   of claimant Qentas Holdings Limited in *United States v. Real Property Located in
     London, United Kingdom, Owned by Qentas Holdings*, 16-cv-05380-DSF ("Qentas
26   Townhouse").  All three claimants are alleged to be beneficially owned by the same
     person, *see* Am. Compl. ¶¶ 491-92, 500-02, 677, 682, and are represented by the same
27   counsel.

28

SANTA MONICA, CALIFORNIA

allegations *in* the complaint, however, should be fair game.  Given the specificity of some of the government's allegations, it is difficult to imagine how any investigation could be harmed by disclosure of the underlying evidence.

Due Process concerns also weigh heavily against a blanket stay, especially in the case of Claimant:  neither Claimant nor its beneficial owner is alleged to have had any involvement in or knowledge of any transactions involving 1MDB.  Rather, even taking all of the complaint's allegations at face value, Claimant is a downstream recipient of funds allegedly subject to forfeiture.  Where Claimant is not alleged to have been involved in the predicate conduct, and where – on the face of the complaint – Claimant has a compelling innocent owner defense, a protective order is especially appropriate.

Finally, the government's request to stay not only discovery but "all proceedings," including motion practice, is without precedent, and should be rejected.  If the complaint fails to state a claim, or if the Court lacks subject matter jurisdiction over this action, then there is no basis on which to continue to assert jurisdiction over the defendant property.  And, of course, if the case is dismissed there will plainly be no civil discovery, so the government's investigation can go forward without fear of whatever alleged adverse effect would arise.

## STATEMENT OF FACTS

On July 20, 2016, the government filed more than a dozen separate civil forfeiture actions.  Simultaneously, the actions were announced by the Attorney General of the United States – as well as other senior DOJ, FBI, and IRS officials – in a televised press conference.  Whatever their faults, the complaints filed by the government in July 2016 reflected the product of a substantial and long-running investigative effort.  Indeed, according to press reports, the government's investigation had begun by at least September 2015[2] – that is, a full two years prior to the date on which the Motion will be

---

[2]    *See* Bradley Hope, "FBI Probes Malaysia Development Fund," *The Wall Street Journal* (Sept. 19, 2015), available at http://on.wsj.com/2w1tIvU.

1   heard.

2   Nearly a full year ago, on September 9, 2016, Claimant filed its Verified Claim and

3   Statement of Interest – the only such claim filed in this case – and, in fact, counsel for

4   Claimant had been in close contact with the government attorneys in charge of this case

5   from the moment it was filed.  Over the course of the following year, at no point did the

6   government suggest it might wish to stay discovery, let alone all proceedings.  To the

7   contrary, a series of stipulations filed in this case provided specific dates when the

8   government would serve Claimant with initial discovery requests, and on March 10,

9   2017, the government actually served Claimant with a robust set of interrogatories.[3]  The

10   parties then set about negotiating a proposed protective order to govern the

11   confidentiality of materials exchanged in discovery.  The government and counsel for

12   Claimant exchanged several drafts of a proposed protective order, as recently as May 28,

13   2017.

14   The parties never finalized the proposed protective order.  Instead, just over a week

15   later, on June 7, the government began filing a series of new, related civil forfeiture

16   actions.  By the end of June 2017, the government had filed 15 new cases.  Still, the

17   government had never mentioned any potential stay.  To the contrary, the government

18   informed Claimant's counsel that it expected to amend the July 2016 complaints to

19   conform to the allegations in the June 2017 complaints,[4] but gave no reason to think the

[3]      Meanwhile, in February 2017, Claimant filed its motion(s) to dismiss.  The
government never responded, and the parties agreed to a series of stipulations extending
the government's time to answer, ostensibly to coordinate the briefing schedules in the
related cases to allow the government to file a consolidated opposition.

[4]      In addition to containing entirely new allegations, the June 2017 complaints
corrected several apparent errors in the June 2016 complaints.  For example, the 2016
complaints alleged that two transfers totaling $24.5 million were received into an account
at Riyad Bank in February and June 2011 maintained in the name of a person defined as
the "PETROSAUDI CO-FOUNDER."  Compl. ¶¶ 99-101.  The very same transactions,
however, were identified in the amended complaint as going to a Riyad Bank account
"maintained in the name of two Saudi nationals," neither of whom, on information and
belief, is the person identified as the PETROSAUDI CO-FOUNDER in the original
complaint.  Am. Compl. ¶¶ 112-115.

1  case would not proceed from that point forward.

2         As the parties began to discuss a scheduling stipulation that would allow the

3  government to file its amended complaint and set a uniform briefing schedule in the

4  various related actions, Claimant's counsel repeatedly told the government that Claimant

5  was prepared to accept whatever motion schedule the government proposed, but that

6  Claimant wanted discovery to begin immediately because the cases had already been

7  pending for more than a year at that point.  In a series of phone calls, the government

8  seemed to agree that at least some discovery could begin immediately, even before

9  motions to dismiss were decided.  Indeed, on June 30, 2017, counsel for Claimant sent

10  the government a proposed scheduling stipulation that included the following language:

11         Pending the entry of an appropriate protective order, the Parties
12         may immediately engage in discovery, other than depositions.
13         This stipulation is without prejudice to the right of any Party to
           seek to expand or narrow discovery, including with respect to
14         depositions, during the pendency of any motions.[5]

15  Over the ensuing weeks, the parties continued to discuss a scheduling stipulation and the

16  terms on which discovery might begin immediately, including revisiting an appropriate

17  protective order.  During the course of those discussions, the government for the first

18  time indicated that it might wish to seek a discovery stay.  For example, a version of the

19  stipulation provided by Claimant's counsel to the government on July 11 provided: "This

20  stipulation is without prejudice to the right of any Party to seek to immediately begin,

21  stay, expand, or narrow discovery."  In a follow-up call that same day, however, counsel

22  for the government explained that it had definitively decided to seek a stay, although it

23  was still undecided on the scope of the requested stay (*i.e.*, whether it would cover some

24  discovery, all discovery, or all proceedings).  Finally, on July 13, 2017, counsel for the

25  _____

26  [5]      To be clear, the government never agreed to this language, and Claimant's
       proposal was not meant to reflect any particular agreement the parties had reached in
27  principle.  Rather, this was Claimant's proposal for the scope of immediate discovery,
       given that the government had seemingly indicated that it was open to the idea of
28  beginning some discovery promptly.

government circulated a draft proposed stipulation that contained language close to what was found in the final stipulation, *i.e.*, that the government would be filing a stay motion of some kind on or before August 11.  The government filed its Motion on August 10, 2017, seeking a complete stay of this action "for all purposes except the filing of timely claims and answers."  Motion at 2.

\*         \*         \*

We recite this history not to suggest that the government breached any promise or acted in bad faith with respect to discovery (it didn't), but to demonstrate that its opinion about the effects of civil discovery – that "proceeding with the instant action is likely to have an adverse effect on the government's ability to conduct the related criminal investigation," Motion at 1 – is a newly held one, despite the fact that its investigation has been ongoing and overt for nearly two years.  As discussed below, in light of this history, the government's undocumented assertion that discovery would adversely affect its investigation does not hold up.

## LEGAL STANDARD

Under the forfeiture laws, the Court may stay discovery upon a showing by the government that a related investigation will be adversely affected, so long as the government's interests cannot be adequately protected through the entry of a more limited protective order.  The relevant statute provides:

> (1)   Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

\*         \*         \*

> (3)     With respect to the impact of civil discovery described in paragraphs (1) and (2), the court may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party

1
2
3
4

> without unfairly limiting the ability of the opposing party to pursue the civil case. In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so.

5   18 U.S.C. § 981(g).

6   To be granted a stay of discovery under this section, the government bears the

7   burden of proving that "(1) the civil forfeiture is related to a criminal case or

8   investigation, and (2) civil discovery will adversely affect the ability of the government to

9   conduct a related criminal investigation or the prosecution of the related criminal

10   case." *United States v. Real Prop. Located at 149 G St., Lincoln, Cal., Placer Cty.*, *APN*

11   *008-266-015-000*, No. 2:12-CV-0705-TLN-DAD, 2013 WL 2664770, at *2 (E.D. Cal.

12   June 12, 2013); *see also United States v. Real Prop. at 6557 Ascot Drive*, No. C 02-4948

13   JSW, 2005 WL 927452, at *2 (N.D. Cal. Apr. 21, 2005) (same).

14   "There is no presumption that civil discovery, in itself, automatically creates an

15   adverse effect on the government's related criminal proceeding," and the government

16   must make an "actual showing" of the anticipated adverse effect. *6557 Ascot Drive*, 2005

17   WL 927452, at *2; *see also United States v. All Funds ($357,311.68) Contained in N. Tr.*

18   *Bank of Fla. Account No. 7240001868*, No. CIV.A.3:04-CV-1476-G, 2004 WL 1834589,

19   at *2 (N.D. Tex. Aug. 10, 2004) (same).  Such a showing entails demonstrating that "the

20   civil discovery *will interfere* with the criminal investigation." *United States v. One 2008*

21   *Audi R8 Coupe Quattro*, 866 F. Supp. 2d 1180, 1183 (C.D. Cal. 2011) (emphasis added).

22   The government cannot establish an adverse effect to the extent "a protective order

23   limiting discovery would protect the interest of one party without unfairly limiting the

24   ability of the opposing party to pursue the civil case."  18 U.S.C. § 981(g)(3); *United*

25   *States v. Real Prop. & Improvements Located at 1419 Camellia Drive, E. Palo Alto, Cal.*,

26   No. C 09-02577 CW, 2009 WL 3297321 (N.D. Cal. Oct. 13, 2009) (holding no stay

27   should be entered where a protective order would obviate the government's concerns).

28

CLAIMANT'S MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION TO STAY

**ARGUMENT**

The Motion should be denied.  The government's investigation has been overt for nearly two years – indeed, it is often the subject of front-page news.  Without a robust showing of the ways in which this mature investigation would supposedly be harmed by civil discovery, it is simply impossible for this Court to make the requisite "determination" that civil discovery will not only "adversely affect" any investigation, but is so potentially problematic that no protective order could ameliorate the government's concerns.  The Motion does not meet this threshold, and in fact is premature given that Claimant has not even propounded discovery requests yet.

The Motion fails entirely to grapple with the possibility of a protective order, but it is clear that at least some discovery can proceed without endangering the government's work.  For example, third party discovery would not entail any discovery of the government, and it would allow Claimant to preserve evidence that may otherwise be lost to time and to begin the lengthy process of seeking foreign discovery under the Hague Convention.  Likewise, the amended complaint contains such detailed information about numerous financial transactions – identifying banks, accountholders, senders, recipients, dates, and amounts – that it is impossible to imagine how the government would be prejudiced by producing the underlying records.  Other categories of discovery would likewise not risk interfering with any investigation, but would allow the parties to begin the work of preparing these sprawling cases for trial.

Finally, there is absolutely no basis on which to stay "all proceedings," including dispositive motion practice.  Such a stay is outside of the ambit of Section 981(g), and would have to be granted under this Court's inherent authority – a power that the Court certainly has, but which should be exercised more circumspectly than for discovery stays under the statute.  More fundamentally, however, motions that attack the adequacy of the government's allegations are judged on the four corners of the complaint, and therefore could not conceivably implicate any investigation.  And jurisdictional motions speak to

the very foundation upon which the Court's authority is based.  If there is no subject matter jurisdiction, there is no reason why the Court should (or legally can) maintain jurisdiction over or otherwise restrain the defendant assets.  This issue is particularly relevant since the Court has already found that there are non-trivial questions about its jurisdiction here.  *See, e.g.*, *United States v. Any Rights to Profits, Royalties and Distribution Proceeds Owned by or Owed to JW Nile (BVI) Ltd., etc.*, No. 16-cv-5364 (C.D. Cal. Mar. 21, 2017) (order granting Motion to File Late Claim and for Relief from Default) ("The jurisdictional defenses are at least plausible.").

## I.   THE GOVERNMENT HAS NOT DEMONSTRATED THAT DISCOVERY WILL ADVERSELY AFFECT ANY ONGOING INVESTIGATION

### A.   The Government Has Not Made an "Actual Showing" That Civil Discovery Will Interfere with any Investigation

The Motion and supporting declaration assert that civil discovery will interfere with the government's investigation.  But the government's burden is to make an "actual showing" that permitting Claimant to pursue civil discovery will interfere with its ongoing investigation. *6557 Ascot Drive*, 2005 WL 927452, at *2.[6]  While Section 981(g)(1) does not demand "a particularized showing" of interference, "[n]either the fact that the Government would be subject to civil discovery, nor bare assertions of hardship by the Government, are enough to satisfy the statutory standard." *United States v. Currency $716,502.44*, No. 08-CV-11475, 2008 WL 5158291, at *4 (E.D. Mich. Dec. 5, 2008) (denying stay of discovery).  Because the government has not met this burden – or indeed tried to meet it – the Court should deny the Motion.

### B.   The Motion Is Not Ripe Because Claimant Has Not Yet Made Discovery Requests

It is not surprising that the Motion fails to articulate how discovery will interfere with any investigation, because Claimant has not actually made any discovery demands

---

[6]   The government must also demonstrate that the civil forfeiture action is sufficiently "related" to its investigation.  For purposes of the Motion, however, Claimant assumes without conceding that this condition has been met.

SANTA MONICA, CALIFORNIA

yet.  That being so, the government and the Court are left to speculate as to what discovery Claimant may seek and the impact it might have on any investigation.  Without specific requests and information from the government about how that discovery will impact its investigation, the government cannot sustain its burden.  Moreover, there is no record on which the Court can assess whether the more limited relief of a protective order, as opposed to a wholesale prohibition on civil discovery, would vindicate the government's concerns.

Courts routinely deny stay motions under these circumstances.  *See, e.g., Real Prop. & Improvements Located at 1419 Camellia Drive, E. Palo Alto, Cal*., 2009 WL 3297321, at *2 (holding that the government was merely speculating that claimants would seek to depose certain witnesses and that given the uncertainty, the motion should be denied, unless and until claimants requested discovery warranting a stay); *United States v. Real Prop. & Premises*, 657 F. Supp. 2d 1060, 1064 (D. Minn. 2009) (denying request for stay where "there is nothing in the record indicating that discovery requests have been served by the parties"); *All Funds ($357,311.68) Contained in N. Tr. Bank of Fla. Account No. 7240001868*, 2004 WL 1834589 at *2 (holding the government failed to make an "actual showing" of the adverse effect, because it failed to either (1) "point to any specific discovery request or abuse that has taken place" or (2) make a "legitimate argument about the prospective ability of [claimants] to engage in discovery that could compromise its related criminal investigation.").

The Motion cites several cases in which it contends courts have stayed discovery prior to any requests being served, but its reliance on these cases is misplaced.  In *United States v. $1,026,781.61 in United States Currency*, Nos. CV 09–04381–JVS(ANx), 2013 WL 4714188 (C.D. Cal. July 29, 2013), for example, the claimants *had* made discovery requests, and the Court's order granting a stay focused on how the specific discovery claimants had initiated would interfere with the government's criminal prosecution.  *Id.* at *2 (staying discovery by a claimant being prosecuted for murder because claimant

recently attempted to depose a critical witness to the criminal case and such discovery could discourage the witness from cooperating).  Similarly, although the claimants in *United States v. 2009 Dodge Challenger*, No. 03:11–CV–328–MA, 2011 WL 6000790 (D. Or. Nov. 30, 2011), had not technically filed discovery requests, they *had* filed a motion for summary judgment, which the government explained would require the production of specific evidence to oppose that would adversely affect its investigation. *Id.* at *2 ("Although claimants stress that they do not seek discovery, the government would be compelled to compile and reveal information and evidence collected in support of its criminal investigation in order to effectively oppose claimants' motions for summary judgment.").[7]

In the event that Claimant propounds discovery requests that the government believes will impact its investigation, then – assuming the parties cannot agree on an appropriate protective order – the government can renew its Motion at that time.  *See United States v. Real Prop. & Improvements Located at 1419 Camellia Drive, E. Palo Alto, Cal*., No. C 09-02577 CW, 2009 WL 3297321, at *2 (N.D. Cal. Oct. 13, 2009) ("In the event that civil discovery is propounded that would intrude upon the government's criminal case, the government can move for a protective order or renew its motion to stay.").  But given the government's detailed complaints, it is hard to imagine that any demand for discovery would appropriately trigger a stay.

For example, the proposed stay would prevent Claimant from obtaining documents

---

[7]     The other cases cited by the government are easily distinguishable for other reasons.  In *United States v. Assorted Firearms, Motorcycles, and Other Personal Prop.*, 677 F. Supp. 2d 1214, 1216 (C.D. Cal. 2009), and *United States v. Approximately $69,577 in U.S. Currency*, No. C 09–0674 PJH, 2009 WL 1404690 (N.D. Cal. May 19, 2009), criminal prosecutions were already underway, the government proposed a definite end to the stay, *i.e.* the conclusion of the already-commenced criminal prosecution, and the claimants had extraordinarily close relationships to the criminal defendant (for example, in *Approximately $69,577*, one of the claimants was the defendant's wife).  Here, in stark comparison, there is no prosecution, no foreseeable end to the requested stay, and Claimant (and its alleged beneficial owner) is not claimed to have had any involvement in or knowledge of the underlying conduct allegedly giving rise to forfeiture.

---

LAW OFFICES · SANTA MONICA, CALIFORNIA

1    and other evidence used to verify the complaints publicly filed on July 20, 2016, or the

2    amended complaints filed on August 4, 2017, but there is no reason the government

3    should be immune from producing such materials.  In particular, the complaints lay out

4    what appears to be a detailed asset-tracing exercise that, based on the face of the

5    complaint, relies on extensive bank records.  *See, e.g.*, Am. Compl. ¶¶ 47-48, 67, 105,

6    115, 129, 227, 241, 317, 529-32, 535, 579-87, and 783.  The complaints, over and over

7    again, identify the relevant bank, accountholders, senders, recipients, dates, and amounts.

8    *Id.*  It is therefore difficult to imagine how it could prejudice the government's

9    investigation to produce those underlying bank records.  *United States v. Contents of*

10   *Accounts, et. al.*, No. 3:10-cv-228-H, 2010 WL 2682397, at *2 (W.D. Ky. July 2, 2010)

11   (rejecting government's request for a four-month stay of discovery where "Defendants

12   are already on notice of numerous issues the government is investigating, based on the

13   property seizures [and] the filing of the civil complaint . . . .  The government has already

14   lost the element of surprise by pursuing the case the way it has.").

15          In addition, the government's proposed stay would bar third party discovery, but

16   again, there is no reason to believe that such discovery would automatically compromise

17   its investigation.  Indeed, the fact the government alleges evidence may be destroyed

18   renders such discovery more urgent and essential.  *See* Enyart Declaration, ¶ 5.  Claimant

19   should not be dependent on the government to obtain evidence relevant to its defense that

20   may, during a stay, be destroyed or otherwise lost.

21          **C.    A Blanket Stay Would Violate Claimant's Due Process Rights**

22          Given the fact that this case has already been pending for over a year, and the

23   government's investigation has reportedly been ongoing for two, the sort of open-ended

24   stay sought by the government here also raises serious Due Process concerns.  *See United*

25   *States v. Real Prop. Located at 6415 N. Harrison Ave., Fresno Cty.*, No. 1:11-CV-00304-

26   BAM, 2012 WL 4364076, at *5 (E.D. Cal. Sept. 21, 2012) ("Claimants are correct that an

27   unreasonable delay between seizure of property and a forfeiture action violates a

28

claimant's right to due process." (internal quotations omitted)); *see generally Bennis v. Michigan*, 516 U.S. 442, 454 (1996) (Thomas, *J.*, concurring) ("One unaware of the history of forfeiture laws and 200 years of this Court's precedent regarding such laws might well assume that such a scheme is lawless—a violation of due process"); *Leonard v. Texas*, 137 S. Ct. 847, 847, 849 (2017) (Thomas, *J.*, respecting the denial of certiorari) (observing "[t]his petition asks an important question: whether modern civil-forfeiture statutes can be squared with the Due Process Clause and our Nation's history," and expressing the view that "I am skeptical that this historical practice is capable of sustaining, as a constitutional matter, the contours of modern practice").

In the Due Process analysis, "[c]ontext is key.  Any given term of future delay, for instance, necessarily must be viewed in light of the status of the criminal investigation, as well as the pendency of any criminal prosecution." *United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 718 (E.D.N.C. 2016).  "To determine whether a delay is unreasonable, courts balance four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the timing of claimant's assertion of his rights; and (4) prejudice to the claimant." *Real Prop. Located at 6415 N. Harrison Ave., Fresno Cty.*, 2012 WL 4364076, at *5.  "[T]hese four enumerated factors are non-exclusive, and the list may be subject to addition or subtraction based on the facts of the case." *$307,970.00, in U.S. Currency*, 156 F. Supp. 3d at 717.

All of these factors overwhelmingly favor the conclusion that further delay – particularly a blanket delay of all discovery – is unreasonable.  Claimant has already suffered more than a year of delay without full briefing of Rule 12 motions or the beginning of discovery (other than the government's service of special interrogatories on the Claimant).  During that time, Claimant has been further prejudiced by the particularly public nature of the government's investigation here:  the Department of Justice has held

one press conference and issued two press releases,[8] the FBI has given public statements to the news media about the status of its investigation,[9] an officer at the U.S. Embassy in Malaysia has commented to local press on several occasions,[10] and near-daily press reports reflect the progress of the investigation blow-by-blow, usually sourced to people "familiar with the matter," although sometimes explicitly to government sources or "investigators."[11]

Meanwhile, while Claimant has agreed to or sought extensions of the schedule in this case, that was always with the understanding that the litigation would proceed – it

---

[8]    Transcript of Remarks by Attorney General Loretta Lynch, "Attorney General Loretta E. Lynch Delivers Remarks at Press Conference Announcing Significant Kleptocracy Enforcement Action to Recover More Than $1 Billion Obtained from Corruption Involving Malaysian Sovereign Wealth Fund" (July 20, 2016), available at http://bit.ly/2vsLPYI; Press Release, "United States Seeks to Recover More Than $1 Billion Obtained from Corruption Involving Malaysian Sovereign Wealth Fund" (July 20, 2016), available at http://bit.ly/2ahwHY5; Press Release, "U.S. Seeks to Recover Approximately $540 Million Obtained From Corruption Involving Malaysian Sovereign Wealth Fund," (June 15, 2017), available at http://bit.ly/2tmBwF0.

[9]    See, e.g., Justin Baer & Bradley Hope, "U.S. Examines Goldman Sachs Role in 1MDB Transactions" The Wall Street Journal (Oct. 14, 2015), available at http://on.wsj.com/2wg2r7o ("Investigators 'have yet to determine if the matter [i.e., the role of a particular bank] will become a focus of any investigations into the 1MDB scandal,' a spokeswoman for the FBI said.").

[10]    "DoJ says its court filings based on reasonable facts," Free Malaysia Today (June 21, 2017), available at http://bit.ly/2wjMv48; and Zikri Kamarulzaman, "Not an attempt to topple Malaysian gov't, says US embassy," Malaysiakini (June 22, 2017), available at http://bit.ly/2wAZW23.

[11]    See, e.g., Justin Baer, "Goldman Sachs Subpoenaed by U.S. Agencies for Documents Related to 1MDB," The Wall Street Journal (July 29, 2016), available at http://on.wsj.com/2wJ7TTe (citing "a person familiar with the matter" to report the existence of several subpoenas); Greg Farrell, et al., "1MDB Prosecutors Said to Eye Ex-Goldman Banker's Money Moves," Bloomberg (Apr. 28, 2017), available at https://bloom.bg/2gfBQmX (citing "people briefed on the matter" to report that "Federal prosecutors then subpoenaed [a former Goldman banker] for questioning in the 1MDB matter").

The leaks of what is presumably Rule 6(e) material are another subject where immediate discovery is appropriate. See, e.g., Order, United States v. Walters, No. 16 Cr. 38 (PKC) (S.D.N.Y. Mar. 1, 2017) (finding that New York based, white collar FBI Supervisory Special Agent had intentionally leaked confidential grand jury information to reporters in an effort to increase pressure on potential subjects or targets of a stalled investigation, recognizing, "[b]ut for the grant of defendant's initial motion directed to the leaks, the misconduct at issue may never have come to light").

---

SANTA MONICA, CALIFORNIA

was not until July 2017 that the government first stated that it would seek a stay.  During the more than a year that this case was pending before that, Claimant's counsel repeatedly stated that it was eager to move these cases forward.  Claimant has also filed its claim and, more than six months ago, its motion(s) to dismiss.  *Contents of Accounts*, 2010 WL 2682397, at *1 (rejecting a proposed four-month stay, sought six months following seizures, where defendants had challenged the government's actions by filing a motion to dismiss).  Claimant is prepared to file its claim in respect of the amended complaint and to renew its motion(s) to dismiss.  Any further delay will serve only to deny Claimant the opportunity to clear its name, exploit its property, and develop its own case, including its innocent owner defense, while allowing the government to continue to collect evidence outside of the Federal Rules of Civil Procedure.

This last point is worthy of elaboration: as set forth in Claimant's motion to dismiss, Claimant is an "innocent owner" of the defendant property by the government's own allegations.  If the Court does not agree to dismiss the case because this is apparent on the face of the complaint, which lacks any allegation about Claimant's involvement in or knowledge of the purported wrongdoing, Claimant has every intention of developing this defense for trial.  A stay would serve to hold that defense in limbo.  "Such a result would undercut Congress's intent to provide an innocent owner defense . . .  to create 'a more just . . . procedure for Federal civil forfeitures' under the Civil Asset Forfeiture Reform Act of 2000."  *Real Prop. & Improvements Located at 1419 Camellia Drive*, 2009 WL 3297321, at *2.  Congress purposefully included an innocent owner defense, and Claimant is entitled to pursue that remedy promptly.  *See Leonard*, 137 S. Ct. at 847 (Thomas, *J*., respecting the denial of certiorari) ("*In rem* proceedings often enable the government to seize the property without any predeprivation judicial process and to obtain forfeiture of the property even when the owner is personally innocent (though some statutes, including the one here, provide for an innocent-owner defense).").

While the Motion contends a stay is needed because evidence might otherwise be

destroyed or witnesses may be intimidated, it does not argue that Claimant will engage in this illegal activity, nor plausibly could it.  Moreover, the risk that evidence will be destroyed and that witnesses will become unavailable will prejudice Claimant, and underscores the need to proceed with discovery right away.  Claimant should not have to depend on the government to collect evidence helpful to its case.  As the Motion notes, discovery of entities and persons located in foreign jurisdictions is essential to this case. Given the time it will take Claimant to pursue such evidence through the Hague Convention and similar means, moving forward with discovery expeditiously is the only way to ensure that Claimant has even the hope of a comparable opportunity to obtain evidence that may be crucial to its case.

## II.   A PROTECTIVE ORDER CAN RESOLVE THE GOVERNMENT'S PURPORTED CONCERNS WHILE ALLOWING CIVIL DISCOVERY TO PROCEED

As explained above, there are plainly categories of discovery that will not jeopardize the government's investigation.  A protective order, rather than a blanket stay, is therefore appropriate even if the Court believes that the government had made a sufficient showing to allow the Court to "determine" that some discovery would adversely affect an investigation.

Section 981(g)(3) explicitly permits the Court to enter a protective order in lieu of a complete stay of discovery, if doing so can sufficiently protect the government's interests.  *See, e.g.*, *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 214 (D.D.C. 2014) ("Here, a well-crafted protective order limiting discovery could 'protect the interest' of the government while preserving the ability of the claimants to pursue the civil case."); *United States v. $177,844.68 in U.S. Currency*, No. 2:13-CV-00100-JCM-GWF, 2015 WL 355495, at *7 (D. Nev. Jan. 27, 2015) (lifting a stay and recommending that the parties enter into a protective order to protect any remaining interests).

Though the government has failed to sustain its burden of establishing that civil discovery would adversely affect its investigation, a protective order would mitigate the

government's hypothetical concern while permitting civil discovery to proceed.  The most appropriate way to proceed would be for the Claimant to propound its discovery requests, and for the government to articulate whether and why it believes that certain categories of discovery would interfere with its investigation.  For those topics or sources of discovery that the government believes should be off limits, the parties can either agree to defer discovery or the Court can enter an appropriate protective order.  But there is little doubt, as set forth above, that there are many valid areas of discovery that would not adversely affect the government's investigation:  bank records, property records, transaction documents, corporate organizational documents, board minutes, third party discovery, discovery concerning Claimant's act of state and international comity defenses, discovery concerning foreign law questions, and the like.  *See, e.g.*, *Sum of $70,990,605*, 4 F. Supp. 3d at 214 ("There are several areas in which the claimants can seek discovery that would not implicate the sensitive information that the government seeks to protect, such as additional information about the applicability of international comity, the act of state doctrine, or the innocent owner defense.").  In addition, large swathes of the government's amended complaint relate to alleged conduct that is clearly outside of any relevant statute of limitations:  the complaint's allegations date back to 2009, and the entirety of the "Good Star Phase" and the majority of the "Aabar-BVI Phase" alleged in the amended complaint took place more than five years ago.  Am. Compl. ¶¶ 9, 10.  There is no reason why out-of-statute conduct cannot be the subject of discovery, especially because the need to preserve evidence as memories fade is particularly acute.  *United States v. $463,497.72 in U.S. Currency*, 604 F. Supp. 2d 978, 982 (E.D. Mich. 2009) (granting only a two-month stay where "[t]he investigation concerns events that occurred nearly three years ago").

Indeed, in the analogous situation where the government seeks a stay of parallel SEC enforcement proceedings pending an ongoing investigation or prosecution, courts frequently deny any stay of civil discovery.  *See, e.g.*, *SEC v. Constantin*, No. 11 Civ.

4642, 2012 WL 1195700, at *1 (S.D.N.Y. Apr. 9, 2012) (citation omitted) ("[T]he Constitution rarely will require a stay in the event of parallel criminal and civil proceedings – rather, a stay in such cases has been characterized as an 'extraordinary remedy.'"); *SEC v. Sandifur*, No. C05-1631 C, 2006 WL 3692611, at *2 (W.D. Wash. Dec. 11, 2006) ("Courts regularly deny stays when civil regulators have worked directly in concert with the criminal prosecutors during the investigation and the Government has used parallel proceedings to its advantage."); *SEC v. Oakford Corp.*, 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998) ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage."); *see also SEC v. Scammell*, No. CV11-6597 DSF (MRWx), 2014 WL 12597627, at *2 (C.D. Cal. Feb. 3, 2014) (rejecting defendant's request for a stay of discovery, in part, because the case had been ongoing for two years). Moreover, it is absolutely routine for courts to permit certain document and third-party discovery to proceed, even as other discovery is stayed.  Indeed, because a complete stay is often unnecessary to vindicate the government's concerns, it often only seeks a partial stay as to certain types of discovery – such as certain depositions, or other discovery that would result in the production of what is effectively Jencks Act material – and even then, courts scrutinize those requests to ensure they are not overbroad and reject them when the government has failed to make the required showing.  *See, e.g.*, *SEC v. Mazzo*, No. SACV 12–1327–DOC(ANx), 2013 WL 812503, at *2 (C.D. Cal. Feb. 25, 2013) (holding "without a more specific request—particular depositions that should be stayed, for example—the Court cannot perform the case-specific analysis required for a thoughtful decision about whether to deny Defendants . . . one of the means by which they can defend themselves in this civil case.").

### III.   THERE IS ABSOLUTELY NO BASIS ON WHICH TO STAY "ALL PROCEEDINGS"

Beyond seeking to stay all discovery, the Motion requests a stay "for all purposes except the filing of timely claims and answers."  Motion at 2.  Because Claimant had previously moved to dismiss the complaint, and intends to move to dismiss the amended complaint, counsel for Claimant sought clarification from the government as to what it was requesting.  In a telephone call that took place on or about August 18, 2017, the government clarified that its Motion requested a stay of all proceedings except (a) the filing of timely claims, and (b) the filing of timely answers *or* motions to dismiss.  In the event that a claimant chooses to file a motion to dismiss, however, the government clarified that it is seeking a stay of any response to that motion, and therefore necessarily any ruling.  Claimant's counsel expressed the view that such a request is overbroad, and that even if some discovery stay were appropriate, there was no basis on which to stay motion practice.

While 18 U.S.C. § 981(g) permits the Court to stay "civil discovery" under certain circumstances, it does not afford any basis for granting the government's request for an indefinite stay of nearly all proceedings – including the briefing and resolution of motions to dismiss and jurisdictional motions – pending unspecified developments in an investigation that has been going on for two years with no charges.  This is why none of the Section 981(g) cases cited in the Motion stay anything other than "civil discovery."

To be sure, courts have the inherent authority to control the cases before them, including by staying proceedings.  But that inherent authority is not unlimited, and certainly does not support the broad relief requested here.  The Motion supplies absolutely no reason for concluding that the briefing and resolution of motions to dismiss and jurisdictional motions, as distinct from civil discovery, will prejudice its investigation, and it is inconceivable that such motions could result in prejudice since they will be decided on the face of publicly-filed complaints.  The fact that the government only apparently decided to seek a stay within the month before filing the

Motion – despite Claimant's motion(s) to dismiss having been filed in February, and the government's opposition having been due on several occasions just days before an extension was granted – strongly suggests that motion practice was irrelevant to the government's determination to seek a stay.

Certainly, the cases the Motion relies upon do not support a stay as broad as the one requested.  Two involved plaintiffs who had both arbitrable and non-arbitrable claims.  *See, e.g.*, *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983); *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 (9th Cir. 1979).  These cases held a stay was appropriate where there would otherwise be "a substantially parallel process" involving identical parties and the resolution of the same factual questions, so long as the non-stayed proceeding was expected to conclude "within a reasonable time in relation to the urgency of the claims presented to the court."  *Leyva*, 593 F.2d at 864.  The situation here is obviously different: there is a civil proceeding in which Claimant has an opportunity to vindicate its interest in the defendant property, and a parallel investigation of unknown persons proceeding on an unknown timeframe that is unlikely to ever afford Claimant an opportunity to be heard.  The other cases relied upon in the Motion likewise do not support the broad stay requested here.  *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384 (2007) (staying federal civil rights lawsuit filed by person who was a defendant in a state criminal prosecution, finding that the federal action risked impugning any later state criminal conviction).

To Claimant's knowledge, there is literally no precedent for a stay that would require claimants to wait in limbo indefinitely as the government pursues an investigation with no specified target and no foreseeable end.  There is also no precedent to deny claimants the opportunity to brief and argue dispositive motions that might dispense with the need for a stay and any further encumbrance on its property.  Indeed, with respect to certain of the cases, this Court has already observed that there is a non-frivolous argument that it lacks subject matter jurisdiction.  *Any Rights to Profits, Royalties and*

*Distribution Proceeds Owned by or Owed to JW Nile (BVI) Ltd., etc.*, No. 16-cv-5364 (C.D. Cal. Mar. 21, 2017) (order granting Motion to File Late Claim and for Relief From Default) ("The jurisdictional defenses are at least plausible."). If the Court does indeed lack jurisdiction, then it would be without power to continue to restrain the defendant assets. And to state the obvious: if the case is dismissed, there will be no civil discovery, and therefore no civil discovery that could interfere with any ongoing investigation. Simply put, there is absolutely no basis on which to stay the resolution of motions to dismiss.

## IV.   IF CIVIL DISCOVERY IS STAYED, THE GOVERNMENT SHOULD HAVE TO RENEW ITS REQUEST EVERY 90 DAYS

The Motion should be denied for all of the reasons set forth above. If the Court grants the stay in any part, however, then it should grant a stay of a definite period of time, such as 90 days, as opposed to the indeterminate, indefinite stay requested in the Motion, which is plainly inconsistent with Supreme Court precedent. *See, e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936) (holding "stay is . . . unlawful unless so framed in its inception that its force will be spent within reasonable limits"); *United States v. All Funds Deposited in Account No. 200008524845*, 162 F. Supp. 2d. 1325, 1332 (D. Wy. 2001) ("The Supreme Court has held that stays which are indefinite will not be upheld.") (citing *Landis*, 299 U.S. at 257); *United States v. Approximately $104,770 in U.S. Currency*, No. C 11-0-249 MMC, 2011 WL 2472573, at *2 (N.D. Cal. June 22, 2011) (rejecting the government's invitation to enter an indefinite stay). Following the conclusion of any stay the Court does enter, "[i]f a second stay is necessary . . . petitioners must bear the burden, when that stage shall have arrived, of making obvious the need." *Landis*, 299 U.S. at 257; *All Funds Deposited in Account No. 200008524845*, 162 F. Supp. 2d. at 1332-1333 ("If there are to be any subsequent motions for a stay, the Government will have to meet the burdens placed on it by 18 U.S.C.A. § 981(g)."); *Approximately $104,770 in U.S. Currency*, 2011 WL 2472573, at *2 (same). Moreover, it is worth noting that courts hold that the government's burden increases over time. *See*

SANTA MONICA, CALIFORNIA

*463,497.72 in U.S. Currency*, 604 F. Supp. 2d at 982 (granting a two-month stay and observing the danger that discovery may adversely affect the related criminal investigation "will dissipate over time"); *$307,970.00, in U.S. Currency*, 156 F. Supp. 3d at 727 (holding as delay gets longer, the government's burden in justifying further extensions increases).

## CONCLUSION

The Motion should be denied in its entirety. In the alternative, the Court should enter a protective order permitting the resolution of motion practice and appropriate, limited discovery to proceed, and requiring the government to renew its motion for a stay every 90 days.

Dated:   August 28, 2017                    Respectfully,

                                            BOIES SCHILLER FLEXNER LLP
                                            *Attorneys for Claimant*
                                            *Park Laurel Acquisition LLC*

                                             /s/ Matthew L. Schwartz
                                            Matthew L. Schwartz
                                            575 Lexington Ave.
                                            New York, New York 10022
                                            Telephone: (212) 446-2300
                                            Fax: (212) 446-2350
                                            E-mail:  mlschwartz@bsfllp.com

                                            David L. Zifkin (SBN 232845)
                                            401 Wilshire Boulevard, Suite 850
                                            Santa Monica, California 90401
                                            Telephone: (310) 752-2400
                                            Fax: (310) 752-2490
                                            E-mail:  dzifkin@bsfllp.com